HAYSER, J.T.C.

I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff originally appealed its tax assessment for 2007 before the Essex County Board of Taxation, which rendered its judgment on May 1, 2007. Being dissatisfied with the decision below, Plaintiff appealed to the Tax Court by way of a complaint filed on June 18, 2007.
The instant matter concerns Defendant’s motion to dismiss the complaint due to the failure of the Plaintiff to pay the relevant taxes as to the subject property, pursuant to N.J.S.A. 54:51A-l(b), “for the year for which review is sought.”[2]
A facsimile of the subsequently filed motion was sent to the court on December 11, 2008, approximately eighteen months after the complaint was filed with the Tax Court.[3] It is undisputed that at the time Plaintiff filed its complaint with the Tax Court, all 2007 taxes levied against the subject property had not been paid. It is also undisputed that a tax sale as to the subject property was successfully concluded on December 11, 2008, and as of that date no taxes were outstanding as to the subject property for 2007.[4]
*487 A hearing as to the Defendant’s motion was conducted on January 23, 2009. Further written submissions were received from the Defendant on February 2, 2009, and from the Plaintiff on February 24, 2009.
The matter was set down for final hearing on March 6, 2009. On the evening of March 5, 2009, Defendant’s then counsel faxed a letter to the court advising that the parties consented to the matter being concluded “on the papers.”[5]

II. DISCUSSION

As noted earlier, this motion concerns the application of N.J.S.A. 54:51A-l(b), particularly that portion of this statutory provision which provides that “[a]t the time that a complaint has been filed with the Tax Court seeking review of judgment of county tax boards, all taxes or any installments thereof then due and payable for the year for which review is sought must have been paid.”
Initially, it should be noted that a motion such as the present one before the court must be brought in a timely manner. The reason for this was discussed in Farrell v. City of Atlantic City, 10 N.J.Tax 336 (1989). In Farrell, the municipality brought its motion pursuant to the cited statute only after county tax board proceedings had been concluded and fifteen months after the complaint had been filed in the Tax Court. As the court noted: “The issue of the nonpayment of taxes must be brought before the court by a municipality within a reasonable time after the filing of the complaint in the interest of maintaining the integrity of judicial proceedings.” Id. at 346. The court concluded that under *488 the facts of that case the municipality did not bring its motion in a timely manner, and denied the motion.[6]
In the present matter, the dispute continued from the county tax board through the Tax Court without the issue of the tax delinquency being resolved through the present time. This history includes an earlier motion to dismiss the complaint for failure to pay taxes, filed on October 31, 2007 and withdrawn on November 15, 2007. On May 15, 2008, Defendant filed a motion to dismiss the complaint for Plaintiffs failure to answer interrogatories, and that motion also was withdrawn, on May 30, 2008.
The issue as to whether the Defendant has brought its [renewed] motion in a “reasonable time,” however, does not provide the final answer in resolving the present motion.
The requirement to pay the taxes on which the appeal is predicated has a rational basis. As the court noted in Rt. 88 Office Assoc. Ltd. v. Township of Brick, 13 N.J.Tax 14, 21 (1992):
The nonpayment of taxes has no relationship to the correct amount of a local properly assessment and is itself irrelevant to the determination of the assessment. The payment of taxes is made a requirement for the filing of a tax appeal not because the payment or nonpayment of taxes has a bearing on the amount of the assessment but to insure that the flow of municipal revenues null not be interrupted by the filing of tax appeals.
[See also, Wellington Belleville, L.L.C. v. Township of Belleville, 20 N.J.Tax 331, 335 (2002).]
Moreover, the statutory requirement passes constitutional muster. See e.g., Stewart v. Township of Hamilton, 7 N.J.Tax 368 (1984); Woodlake Heights Homeowners Ass’n v. Township of Middletown, 7 N.J. Tax 364 (App.Div.1984); Schneider v. City of East Orange, 196 N.J.Super. 587, 483 A.2d 839 (App.Div.1984), aff'd 103 N.J. 115, 510 A.2d 1118, cert. denied, 479 U.S. 824, 107 S.Ct. 97 93 L.Ed.2d 48 (1986).
*489 Parallel statutes have provided previously different jurisdictional requirements and results as to the required payment of taxes:
1. Where an appeal is filed to the county lax board fin which N.J.S.A 54:3-27 is applicable] ... the appeal is subject to a motion for dismissal; however, the taxpayer has the right to make full payment prior to the return day of the motion, thereby sustaining his right to maintain his appeal.
2. Where . a taxpayer files his appeal directly to the Tax Court [in which N.J.S.A 54:3-27 is again applicable], the payment standard applicable is the same as that applied to appeals to the county tax board pursuant to N.J.S.A 54:3-27 as set forth in one above.
3. Where a taxpayer files an appeal with the Tax Court from a judgment of the county board pursuant to N.J SA 54:51A-l(b) ... as a jurisdictional prerequisite to perfecting the appeal, all taxes due for the year under review at the time of filing- must have been paid. Full payment after filing the appeal but prior to the taxing district’s motion to dismiss does not cure this defect.
[Stewart, supra, 7 N.J. Tux at 378 (citations omitted).] [7]
In 1999, both N.J.S.A. 54:51A-l(b) and N.J.S.A. 54:3-27 were amended by L. 1999, c. 208, §§ 5 and 3, to permit the Tax Court and county tax boards to, in similar, relevant part, “relax the tax payment requirement and fix such terms of payments as the interests of justice may require.” The effect is to permit “cure” of the failure to have made timely, full payment of the taxes due as a precondition for filing a tax appeal, as circumstance may warrant on the facts of each case.
As noted in Christian Asset Management Corp. v. City of East Orange, 19 N.J.Tax 469, 475 (2001):
[Tjhe tax payment requirement is no longer a jurisdictional matter incapable of being relaxed by this court.... The effect of this amendment is to allow the Tax Court to hear the merits of a case, if required by the interests of justice. . While it is obvious that the Legislature made a determination that there may be some circumstances which warrant a relaxation of the otherwise strict tax payment requirement, the Legislature has not provided any instruction, example, or anything else in the way of guidelines ..
*490 While the court in Wellington Belleville, supra, 20 N.J. Tax at 336, noted some minimum circumstances that might warrant the relaxation while still preserving the tax payment requirement, the court in Huwang v. Township of Hillside, 21 N.J.Tax 496 (2004), correctly pointed out that these circumstances “were not intended to be all encompassing.” Id. at 505.
The issue remains, however, as to whether the “interests of justice” exception of N.J.S.A. 54:51A-l(b) should be applied to the facts of this case. In Farrell, supra, a decision implicating the application of N.J.S.A. 54:51A-l(b), the court noted that a municipality may choose to “pursue the remedy of a tax sale,” rather than filing a motion to dismiss the complaint pursuant to the relevant statute. 10 N.J. Tax at 346. In Freehold Office Park v. Township of Freehold, 12 N.J.Tax 433 (1992), the court denied a motion to dismiss under N.J.S.A. 54:3-27, holding that the payment of taxes by a tax certificate holder satisfied the statutory requirement. As the court stated:
Title 54 ... like any other statutory provision, is to be construed in a meaningful and realistic manner with a view to carrying out the legislative intent____Statutes are to be read sensibly rather than literally____The receipt of tax revenues by a municipality upon the sale of a tax sale certificate to a third party satisfies the purpose of [the statute] by providing tax revenues to the municipality without regard to the pendency of a tax appeal. The actual wording of [the statute] may be misleading if it is interpreted to have any other purpose than to ensure that tax revenues are not inteirupted by the filing of tax appeals. It is also clear that local property taxes are not assessed against a property owner, and a property owner has no personal liability for such taxes.
[Id. at 439-44 (emphasis added); see also, Echelon Glen Cooperative, Inc. v. Township of Voorhees, 275 N.J.Super. 441, 646 A.2d 498 (App.Div.), certif. denied, 138 N.J. 272, 649 A.2d 1291 (1994) (A tax sale certificate is the equivalent of the payment of taxes); Alberto Ramos v. City of Passaic, 19 N.J.Tax 97 (2000)(Tax-payer complied with N.J.S.A. 54:51A-l(b) since the taxes were not [constitutionally] delinquent when the municipality received the outstanding taxes on the property through the sale of a tax certificate to a third party).]
In the present matter, all outstanding taxes for 2007 have been paid, particularly through the sale of a tax certificate to a third party. The purpose of the tax payment requirement of N.J.S.A. 54:51A-l(b), like that of N.J.S.A. 54:3-27, is to assure the *491 uninterrupted flow of revenue to the municipality during a tax appeal. The statutory mandate has been satisfied, now, in this matter.
Moreover, with the 1999 amendment to both statutes, the failure to initially pay all taxes under N.J.SA. 54:51A-l(b) is no longer a “jurisdictional prerequisite.” The amendment’s purpose is to give some relief from the strict application of the statute and permit a court to “relax the tax payment requirement” as sound discretion exercised under the circumstances warrants.
It is true that the tax certificate sale, or vice versa the submission of a motion to dismiss, in this matter, occurred, conveniently or not, on the same day, but the decision and preparation for the tax sale were obviously made before the motion’s submission, to comply with required procedures for the sale.[8]
Just as it is important to protect the flow of tax moneys to the municipality, certainly once that goal is satisfied, if not sooner, *492 there is an equal concern to arrive at a proper assessment of real property, not simply in fairness to the immediate taxpayer but all taxpayers so that the burdens of taxation are shared fairly by all.
It would be a strange view of “interests of justice” when a court could exercise discretion to delay full payment of the taxes owed, or accept that late payment of the taxes has been made by the taxpayer itself, to allow an appeal to continue, while holding that the “interests of justice” do not permit the acknowledgment of the undisputed fact that no 2007 taxes are owed at this time, requiring the appeal to be dismissed. As noted in Farrell, the municipality has chosen to make itself whole by a tax sale, and the payment received constitutes the full payment of the taxes owed for the period in question.

CONCLUSION

Under the specific facts of this case, no “interests of justice” would be served by dismissing the complaint at this late stage when the overriding purpose of N.J.S.A. 54:51A-l(b) has been satisfied, given clearly the intent of the 1999 amendment to remove any “jurisdictional prerequisite.”

 Defendant first incorrectly brought its motion pursuant to N.J.S.A. 54:3-27, which pertains only to appeals before a County Tax Board or those filed directly with the Tax Court.

 The motion originally included three docket numbers. By way of letter dated January 8, 2009, Defendant withdrew its motion as to the 2006 tax appeal under Docket No. 005602-2006, due to the fact that it was discovered that "the Taxpayer has paid all outstanding taxes for 2006." Defendant further withdrew its motion as to the 2008 tax appeal under Docket No. 008164-2008, as that matter was dismissed with prejudice by final Order of November 21, 2008 due to the Plaintiffs failure to pay taxes for the subject year.

 It is noted that after waiting eighteen months, Defendant's motion was only faxed on the very day of the tax sale.

 Defendant's then counsel initially advised the court by email on March 4, 2009 and voicemail on March 5, 2009, that counsel would not be representing the Defendant for the conclusion of its motion hearing since counsel no longer represented the Defendant. The court subsequently advised Defendant's counsel that counsel's representation for the conclusion of this matter was to be guided by R.P.C. 1.16(c).

 Interestingly, the court cited Lecross Associates v. City Partners, 168 N.J.Super. 96, 401 A.2d 1099 (App.Div.), certif. denied, 81 N.J. 294, 405 A.2d 837 (1979), for the proposition that a municipality might conclude in certain circumstances to accept the remedy of a tax sale rather than bringing a motion to dismiss the complaint for nonpayment of taxes.

 The ability to "cure" arose under N.J.S.A. 54:3-27 presumably from the fact that the statute "does not indicate when the taxes have to be paid," unlike N.J.S.A. 54:51A-l(b). County of Essex v. City of East Orange, 214 N.J.Super. 568, 574, 520 A.2d 788 (App.Div.), certif. denied, 107 N.J. 120, 526 A.2d 189 (1987).

 When speaking of required procedures for a tax sale the court is speaking mainly of NJ.SA. 54:5-25 and NJ.SA. 54:5-26.
NJ.SA. 54:5-25 states:
After completing the list or sections thereof the collector shall give public notice of the time and place of sale, stating the description of the several lots and parcels of land and the owner's name as contained in the list, together with the total amount due thereon respectively as computed to the date of tax sale and stating in substance that the respective lands will be sold to make the amounts severally chargeable against them on said date as computed in the list, together with interest to the date of sale, and the costs of sale. No other statements need be included in the notice.
NJ.SA. 54:5-26 states, in relevant part:
Copies of the notice of a tax sale shall be set up in five of the most public places in the municipality, and a copy of the notice shall be published in a newspaper circulating in the municipality, once in each of the four calendar weeks preceding the calendar week containing the day appointed for the sale. In lieu of any two publications, notice to the property owner and to any person or entity entitled to notice of foreclosure pursuant to section 20 of P.L.1948, c. 96 (C.54:5-104.48) may be given by regular or certified mail, the costs of which shall be added to the cost of the sale in addition to those provided in R.S.54:5~38, not to exceed $ 25 for each set of notices for a particular property.